[Cite as *State ex rel. Reinhart v. Indus. Comm.*, 2016-Ohio-825.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Carl E. Reinhart, | : | |
| Relator, | : | |
| v. | : | No. 15AP-246 |
| Industrial Commission of Ohio and Greenlawn Companies, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

## D E C I S I O N

### Rendered on March 3, 2016

---

**On brief:** *Law Offices of Thomas Tootle Co.*, and *Thomas Tootle*, for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Shaun P. Omen*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Carl E. Reinhart, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation and to enter an order finding he is entitled to that compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued the appended decision, which includes findings of fact and conclusions of law. The magistrate recommends that this court deny the requested writ of mandamus. Specifically, the magistrate determined

that the commission did not abuse its discretion in determining that Reinhart's education and work history were both positive vocational factors that would permit him to perform entry-level, unskilled, light-duty work. The magistrate rejected Reinhart's argument that this court's decision in *State ex rel. Ramsey v. Indus. Comm.*, 10th Dist. No. 99AP-733 (Mar. 30, 2000) (affirmed without opinion in *State ex rel. Ramsey v. Indus. Comm.*, 91 Ohio St.3d 24 (2001)), precluded the commission from denying his request for PTD compensation without explaining why it did not accept the evidence of Reinhart's educational limitations as reflected in a vocational evaluator's report.

{¶ 3} Reinhart has filed the following objection to the magistrate's decision:

> The Magistrate's Decision upholding the decision of the Industrial Commission denying Relator's request for permanent total disability is in error because it ignored this Court's precedent in *State ex rel. Ramsey v. Indus. Comm.*, 10th Dist. No. 99AP-733 (Mar. 30, 2000), affirmed by the Supreme Court in *State ex rel. Ramsey v. Indus. Comm.*, [91] Ohio St.3d 24 (2001).

{¶ 4} Reinhart argues that, pursuant to *Ramsey*, the commission abused its discretion in denying his request for PTD compensation without discussing the evidence showing that Reinhart was not a feasible candidate for vocational rehabilitation. The magistrate considered and rejected this argument, finding *Ramsey* to be distinguishable from the facts in this case. Contrary to Reinhart's arguments, we find the magistrate correctly determined that his reliance on *Ramsey* is misplaced.

{¶ 5} In *Ramsey*, the relator filed a mandamus action after the commission denied his application for PTD compensation without discussing his significant, but unsuccessful, rehabilitation efforts. The commission apparently relied solely on "the objective medical findings of an unbiased examiner." *Id.* The vocational evidence in *Ramsey* demonstrated that, despite relator's best efforts to succeed at rehabilitation, he failed. *Id.* This court disagreed with the idea that reeducation and retraining efforts can only be used "as a means to punish injured workers on those occasions when a hearing officer feels that the injured worker has failed to exercise his or her best efforts at rehabilitation." *Id.* Consequently, we held that an injured worker's unsuccessful "serious

efforts at rehabilitation * * * should be considered as a factor in favor of granting PTD compensation." *Id.*

{¶ 6}   Here, Reinhart did not participate in a rehabilitation program based on the vocational evaluator's determination that he was not a good candidate for rehabilitation services.  The vocational evaluator opined that Reinhart, who had worked as a mobile-home set-up worker for approximately 40 years, lacked transferrable skills to provide entry into semi-skilled or skilled occupations at the sedentary strength level. According to Reinhart, *Ramsey* required the commission to discuss the evaluator's determination that rehabilitation was not feasible for him.  Reinhart also asserts that his participation in vocational testing unequivocally demonstrated his deficiencies in the areas of reading, writing, and math.  He faults the commission for not explaining its rejection of the vocational evaluator's report establishing those deficiencies.  Like the magistrate, we disagree with these arguments.  *Ramsey* did not prohibit the commission from denying Reinhart PTD compensation without first discussing the fact that a vocational evaluator tested Reinhart and determined that Reinhart was not a good candidate for rehabilitation. *Ramsey* requires the commission to give appropriate weight to a relator's significant effort to rehabilitate.  But, in this case, Reinhart did not participate in a rehabilitation program.   Therefore, we agree with the magistrate's conclusion that *Ramsey* is distinguishable.

{¶ 7}   Additionally, as the magistrate noted, in denying Reinhart's request for PTD compensation, the commission relied on the medical report of James J. Powers, M.D., who opined that Reinhart is capable of light-duty work, with no overhead reaching or lifting.  The commission also determined that Reinhart possesses skills that would be transferrable to light-duty work.  Contrary to Reinhart's suggestion, unrefuted evidence of his limited or even marginal education level did not require the commission to find that he is permanently and totally disabled.  Because the commission is the expert on the vocational or nonmedical factors in a PTD compensation determination, *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266, 270-71 (1997), it was within the commission's authority to evaluate the significance of the evidence of Reinhart's strong work history and his limited ability to read, write, and perform basic math.  Therefore, the commission did not abuse its discretion in resolving that relator's education and work

history were positive vocational factors which would permit him to perform entry level, unskilled, light-duty work.

{¶ 8}    Following our independent review of the record pursuant to Civ.R. 53, we find that the magistrate correctly determined that Reinhart is not entitled to the requested writ of mandamus.  The magistrate properly applied the pertinent law to the salient facts.  Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  We therefore overrule Reinhart's objection to the magistrate's decision and deny his request for a writ of mandamus.

*Objection overruled;*
*writ of mandamus denied.*

**KLATT and SADLER, JJ., concur.**

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Carl E. Reinhart, | : | |
| Relator, | : | |
| v. | : | No.  15AP-246 |
| Industrial Commission of Ohio and Greenlawn Companies, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 24, 2015

*Law Offices of Thomas Tootle,* and *Thomas Tootle,* for relator.

*Michael DeWine*, Attorney General, and *Shaun Omen,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 9}   Relator, Carl E. Reinhart, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied his application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 10} 1. Relator has sustained three work-related injuries during the course of his employment with Greenlawn Companies, Inc., and his claims have been allowed for the following conditions:

CLAIM NO. 09-364837

ALLOWED: CERVICAL STRAIN/SPRAIN; THORACIC STRAIN/SPRAIN.

CLAIM NO. 10-313967

ALLOWED: HEAD CONTUSION; THORACIC BACK CONTUSION; LEFT SHOULDER SPRAIN; SPRAIN LUMBAR REGION.

CLAIM NO. 12-301078

ALLOWED: RIGHT LONG HEAD BICEPS TEAR; RIGHT SUPRASPINATUS TEAR; RIGHT SUBSCAPULARIS TEAR.

{¶ 11} 2. Relator has not returned to work since January 3, 2012, the date of the third injury.

{¶ 12} 3. In January 2014, relator was referred for vocational rehabilitation through Greenlawn's Managed Care Organization ("MCO"). Jeffrey R. Berman, the vocational rehabilitation case manager, sent a letter to relator's treating physician, Young Soon Lee, M.D., notifying him of the referral. In his initial rehabilitation assessment, dated February 14, 2014, Mr. Berman reviewed the Medco-14, which Dr. Lee had provided:

> Dr. Lee provided a MEDCO-14 with temporary restrictions dated January 8, 2014. An expiration date is not noted on the form. Dr. Lee restricted lifting to ten pounds occasionally. Mr. Reinhart is not able to reach or lift overhead. He is also totally restricted from using a keyboard. Hours of work were noted to be two to three hours per day for twelve hours per week. Mr. Reinhart is allowed to perform simple grasping and repetitive activities with both hands. Sitting is allowed for two hours at one time. Standing and walking can be performed up to one half hour at one time. Mr. Reinhart's functional limitations do not meet the basic requirements of sedentary work as defined in the

Dictionary of Occupational Titles published by the US Department of Labor.

{¶ 13} Mr. Berman noted that relator had begun receiving social security disability benefits in November 2013 and recommended a vocational evaluation to explore whether or not relator was a good candidate for vocational rehabilitation.

{¶ 14} 4. Eric W. Pruitt, a vocational evaluator, met with relator on March 15, 2014. Mr. Pruitt administered various tests and noted that relator's scores were well below average for reading, spelling, and math computation when compared to adults his age, and that his vocational aptitude scores were very low. Mr. Pruitt concluded that relator's aptitude scores were below the level required for the performance of his past work duties as specified by the Dictionary of Occupational Titles. In conducting the transferrable skills analysis, Mr. Pruitt based his analysis on a residual functional capacity for performing sedentary strength work. As such, occupations that required lifting or carrying more than ten pounds, and which required occasional, frequent or continuous postural activities, were eliminated from the search. Ultimately, Mr. Pruitt concluded that relator did not have any transferrable skills to provide entry into semi-skilled or skilled occupations at the sedentary strength level. Based on the overall results of his vocational evaluation, Mr. Pruitt concluded that relator was not a feasible candidate for vocational rehabilitation services.

{¶ 15} 5. Based on Mr. Pruitt's evaluation, Mr. Berman closed relator's vocational rehabilitation file, stating:

> Carl Reinhart was assigned to this case manager on January 22, 2014. Initial contact occurred on January 24, 2014 and the initial assessment was conducted on January 29, 2014. Mr. Reinhart reported a lengthy work history in the set-up and transportation of mobile homes. His right shoulder injury resulted in essentially sedentary work activity restrictions from Dr. Lee. The most recent MEDCO-14 was dated January 8, 2014. Dr. Lee noted Mr. Reinhart could perform bilateral grasping and repetitive activity with both upper extremities. However, reaching above shoulder level and using a keyboard was totally restricted. The restrictions were marked as temporary. Dr. Lee noted that Mr. Reinhart could work two to three hours per day for up to twelve hours per week. Feasibility factors

identified during the initial assessment meeting included Mr. Reinhart's age of sixty-one years, limited work hours, no high school diploma or GED and lengthy work history in a single occupation or related group of occupations.

The case manager consulted with the MCO and BWC regarding the feasibility issues in the case. The MCO and BWC agreed to schedule Mr. Reinhart for a comprehensive vocational evaluation. Eric Pruitt, CRC conducted the evaluation on March 15, 2014. Mr. Reinhart scored below the fifth grade level in sentence comprehension, spelling and math computation. Mr. Reinhart scored in the low to very-low range on all the aptitude tests. The transferable skills analysis did not identify any occupations for placement within Mr. Reinhart's worker trait profile. Based on the results of the vocational testing and transferrable skills analysis Mr. Pruitt stated in the report that Mr. Reinhart was not a good candidate for re-training. Therefore, the case manager recommended the rehabilitation file be closed because Mr. Reinhart was not a good candidate for vocational rehabilitation. Mr. Reinhart does not have access to occupations in the labor market due to his functional limitations, poor academic achievement and aptitude levels, and inability to be trained for work within his cognitive and physical capabilities.

{¶ 16} 6. Relator submitted his PTD application on April 29, 2014. In his application, relator noted that he was receiving social security disability payments, the highest grade of school he completed was tenth grade, and he had not received his GED nor had he completed any trade or vocational training. Relator indicated that he could read, write, and perform basic math, but not well.

{¶ 17} 7. Relator was examined by Cynthia Taylor, D.O. In her April 17, 2014 report, Dr. Taylor identified the allowed conditions in relator's claims, provided her physical findings upon examination, and concluded that relator should be awarded PTD compensation, stating:

Carl E. Reinhart has suffered injuries to his right shoulder. He has significant limitations in right shoulder range of motion and right shoulder strength. He is limited to lifting 5 lbs with his right upper extremity and is unable to do any overhead lifting.

As a result of his injuries to his cervical, thoracic and lumbar spine, he has very limited range of motion and chronic cervical, thoracic and lumbar pain. His restrictions are such that he is unable to squat or kneel; he is unable to lift greater than 10 lbs and needs the freedom to sit and stand as-needed.

As a result of his three industrial injuries listed above, it is my opinion that he should be awarded permanent and total disability.

{¶ 18} 8. Relator was also examined by James J. Powers, M.D. In his August 12, 2014 report, Dr. Powers identified the allowed conditions in relator's claims, provided his physical findings upon examination, concluded that relator had a nine percent whole body impairment, and could perform light-duty activity with no overhead reaching or lifting.

{¶ 19} 9. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on October 2, 2014 and was denied. The SHO relied on the medical report of Dr. Powers to conclude that relator had the ability to perform employment within the light physical range and noted that there were many unskilled entry-level sedentary jobs which could be performed without any transferrable skills, without a high school education, and which did not require participation in a rehabilitation program.

{¶ 20} The SHO considered relator's age of 61 years to be a neutral vocational factor and found his education and prior work history to be positive vocational factors, stating:

> The Injured Worker completed the ninth grade level of education, and three days of the tenth grade. In addition, the Injured Worker obtained his Chauffeur's License, and eventually his Commercial Driver's License. The Staff Hearing Officer finds the Injured Worker's level of education is overall deemed as a positive vocational factor. The Injured Worker is able to read, write, and perform basic math, although he indicates on his IC-2 application that he is able to read, write, perform basic math "not well." The Staff Hearing Officer finds that the Injured Worker's educational level, in combination with the ability to read, write, and perform basic math, would assist him in obtaining and performing entry-level unskilled types of employment. These are jobs that do not require any transferable skills, or even a

high school education. Rather, these jobs can be learned and performed by individuals while on the job and within a matter of days.

The Injured Worker's entire work history was identified as being continuous and uninterrupted employment. The Injured Worker, for his entire career starting at age 18, was in the mobile home business. This involved driving a semi-truck, and moving mobile homes to their eventual location. It involved setting up trailers, mostly in Ohio, but his current Employer of Record also involved locating mobile homes at other places throughout the United States. He testified it also involved paperwork and that he was capable of performing all those duties with no problem. He had a log book to record mileage and time involved in transportation. He also recorded the paperwork necessary in delivery of the mobile homes. He filled out his time card and kept track of the hours of time spent on the road. Although he did not have a computer, the Staff Hearing Officer finds that his continuous and uninterrupted prior work history is overall viewed as a positive vocational asset. He has obviously demonstrated the ability to obtain and maintain employment. He has demonstrated the ability to complete annual commercial driver's license requirements over the years, including completing the air brakes test when it came about. He had been grandfathered into the CDL licensure because he already had a chauffeur's license prior to the necessity of a commercial driver's license. He said he was able to complete this portion of the air brakes section of the CDL license by "reading the book." He was capable of driving over the road, keeping log books, and other records necessary in the portage and delivery of mobile homes. This demonstrated work ability was performed in settings similar to some of the job types available within the light physical range.

{¶ 21} 10. The SHO ultimately concluded that relator was capable of performing within the light work limitations, no overhead reaching or lifting, and that he possessed skills that would be transferrable to other types of light-duty work, and was not permanently and totally disabled.

{¶ 22} 11. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 23} Relator argues that the commission abused its discretion when it determined that his ninth grade education was a positive vocational factor when the vocational evidence indicated that he tested well below that grade level. Relator also asserts the commission was required to discuss his efforts at rehabilitation.

{¶ 24} For the reasons that follow, the magistrate disagrees with relator's assertion and recommends that this court deny relator's request for a writ of mandamus.

{¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 26} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 27} The vocational report to which relator directs this court's attention was prepared by Eric Pruitt who administered various tests indicating relator was below

average for reading, spelling, and math. Mr. Pruitt also concluded that relator lacked transferrable skills for sedentary work and was not a feasible candidate for vocational rehabilitation services. In reaching this conclusion, Mr. Pruitt relied on the results of his testing and Dr. Lee's Medco-14, which restricted relator to lifting and carrying no more than ten pounds, indicated that he was unable to type and use a keyboard, that he could sit for 2 hours, walk for 30 minutes, and stand for 30 minutes during an 8-hour day with a break, and that he was only able to work a total of 12 hours a week.

{¶ 28} In finding that he could perform some sustained remunerative employment, the commission relied on the medical report of Dr. Powers who concluded that relator could perform light-duty work provided there was no overhead reaching or lifting. To the extent that Mr. Pruitt's vocational evaluation confined itself to whether or not relator was able to perform sedentary work, Mr. Pruitt did not consider whether or not relator could perform light-duty work from a vocational standpoint.

{¶ 29} Relator points to Ohio Adm.Code 4121-3-34(B)(3)(b), which provides, in pertinent part:

> "Education" is primarily used to mean formal schooling or other training which contributes to the ability to meet vocational requirements. The numerical grade level may not represent one's actual educational abilities. If there is no other evidence to contradict it, the numerical grade level will be used to determine educational abilities.

{¶ 30} Relator specifically points out that the commission's order notes he completed the ninth grade and asserts that, pursuant to sub-section (b), the numerical grade level will be used to determine educational abilities unless there is other evidence to contradict it. In the present case, relator asserts that the testing performed by Mr. Pruitt contradicts his ninth grade education and his education should be classified as marginal.

{¶ 31} Marginal and limited education are defined in Ohio Adm.Code 4121-3-34(B)(3)(b) as follows:

> "Marginal education" means sixth grade level or less. An injured worker will have ability in reasoning, arithmetic, and language skills which are needed to do simple unskilled types of work. Generally, formal schooling at sixth grade level or less is marginal education.

> (iii)  "Limited education" means seventh grade level through eleventh grade level. Limited education means ability in reasoning, arithmetic and language skills but not enough to allow an injured worker with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. Generally, seventh grade through eleventh grade formal education is limited education.

{¶ 32} Relator argues that the commission "offered no explanation as to why it failed to address unbiased and wholly un-contradicted evidence."  (Relator's brief, 12.)

{¶ 33} Based on the above definitions, injured workers with either a marginal or limited education are capable of performing unskilled work.  The commission did not simply accept relator's grade level as evidence he could perform some sustained remunerative employment.  The commission specifically found that relator's education, along with his ability to obtain a chauffer's license and a commercial driver's license, and his self-reported ability to read, albeit not well, would assist him in performing entry-level unskilled types of employment which do not require any transferrable skills or even a high school education. The magistrate finds that the commission's determination did not constitute an abuse of discretion in this regard.

{¶ 34} Further, when evaluating relator, Mr. Pruitt relied on a medical report which found that relator was only capable of performing sedentary work for no more than 12 hours a week and was unable to use a keyboard.  All of Mr. Pruitt's findings were based on his assumption that this was the highest exertional level which relator could perform. However, in denying his application for PTD compensation, the commission relied on the medical report of Dr. Powers who found that relator was capable of performing light-duty work with the restriction of no reaching overhead.  This is a significant distinction in and of itself since jobs which require a person be able to perform light-duty work or above can often be performed by a worker whose educational aptitude is limited or even marginal. Given this additional distinction, the magistrate finds that the commission was not required to discuss the testing results contained in the vocational report.

{¶ 35} Citing this court's decision in *State ex rel. Ramsey v. Indus. Comm.,* 10th Dist. No. 99AP-733 (Mar. 30, 2000), affirmed by the Supreme Court of Ohio in *State ex rel. Ramsey v. Indus. Comm.,* 91 Ohio St.3d 24 (2001), relator argues that, at the very

least, the commission was required to explain why it chose not to accept the evidence of relator's educational limitations. Robert Ramsey filed a mandamus action after the commission denied his application for PTD compensation in an order which failed to discuss his efforts at rehabilitation and instead, appeared to rely solely upon "the objective medical findings of an unbiased examiner." Finding that it was unfair that re-education and retraining efforts can only be used as a means to punish injured workers on those occasions when a hearing officer feels the injured worker has failed to exercise their best efforts at rehabilitation, this court found that "where an injured workers [sic] has made serious efforts at rehabilitation but has not succeeded should be considered as a factor in favor of granting PTD compensation, especially where, as here, the Bureau of Workers' Compensation's own reports demonstrated a failure to be rehabilitated despite the injured worker's best efforts." *Id.* at 1.

{¶ 36} Relator argues that, like Ramsey, his efforts at rehabilitation could only be characterized as positive and, as such, the commission's failure to mention or address this pertinent information constituted an abuse of discretion.

{¶ 37} The magistrate finds that relator's factual situation is not similar to the situation in the *Ramsey* case. Ramsey had participated in a rehabilitation program for several weeks. Serious efforts were made to actually rehabilitate and retrain him. In the present case, relator was evaluated one time, but did not participate in a rehabilitation program, admittedly because the evaluator determined that he was not a good candidate for rehabilitation. The fact that relator was evaluated one time and was found not to be a feasible candidate is not a fact which the commission is required to discuss.

{¶ 38} The commission is the exclusive evaluator of the vocational evidence and is not bound by the determinations made by a vocational evaluation. *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266 (1997).

{¶ 39} Based on the foregoing, it is this magistrate's decision that the commission did not abuse its discretion when it determined that relator's education and work history were both positive vocational factors which would permit him to perform entry-level,

unskilled, light-duty work, and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

### NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).